**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re:                                          :       Chapter 7
                                                :
JANELIN GRULLON,                                :       Case No. 13-11716 (ALG)
                                                :
                                                :
               Debtor.                          :
-----------------------------------------------------------------

# MEMORANDUM OF DECISION AND ORDER

A P P E A R A N C E S:

KORNFELD & ASSOCIATES, P.C.,
*Counsel to Mount Calvary Pentecostal Church, Assemblies of God*
        By:     Randy M. Kornfeld
                Brian P. Mangan
570 Lexington Avenue, 19th Floor
New York, New York 10022

DAVID I. PANKIN, P.C.,
*Counsel to the Debtor*
        By:     Roger N. Schumann
450 Seventh Avenue, Suite #1304
New York, New York 10123


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Creditor Mount Calvary Pentecostal Church, Assemblies of God ("Mount Calvary") has not forgiven its debtor, Janelin Grullon (the "Debtor"). On the contrary, it has sought the extraordinary relief of dismissal of the Debtor's Chapter 7 bankruptcy case for bad faith under § 707(a) as well as § 707(b)(3) of the Bankruptcy Code [ECF No. 26]. For the reasons set forth below, Mount Calvary's motion is denied.

**Facts**

The following facts are established from the record of the case and are not in material dispute.

The Debtor owned a laundromat business named J.G. Laundromat, Inc., which entered into a lease with Mount Calvary to rent a commercial building located at 2057 Amsterdam Avenue, New York, NY. The Debtor personally guaranteed payments under the lease. In May 2009 J.G. Laundromat fell behind on its rent payments and, in response, Mount Calvary filed an action in the Civil Court of the City of New York, County of New York to recover all unpaid rent. On April 18, 2011, J.G. Laundromat and Mount Calvary entered into a stipulation of settlement that required J.G. Laundromat to pay back the $45,605.31 of arrears in installments. J.G. Laundromat made only one $3,000 payment after the settlement was executed and was eventually evicted for non-payment of rent.

As a result of J.G. Laundromat's failure to satisfy its lease obligations, Mount Calvary brought an action against the Debtor in the Supreme Court of New York, County of New York in September 2011 to enforce the Debtor's personal guarantee on the lease. On February 22, 2013, the Court granted Mount Calvary's motion for summary judgment against the Debtor in the amount of $66,912.76. Thereafter, on May 24, 2013, the Debtor filed a chapter 7 petition.

In the chapter 7 case Mount Calvary appeared and obtained several extensions of its time to object to the Debtor's discharge as well as to file a motion to dismiss under § 707(b). The Chapter 7 Trustee also obtained extensions of his time to object to discharge and of the right of the U.S. Trustee to object to discharge and to file a motion to dismiss for substantial abuse. Eventually, the Chapter 7 Trustee and the U.S. Trustee let their time run out, and on January 22, 2014 the Chapter 7 Trustee filed his report of "No Distribution," certifying that he had made

"diligent inquiry into the financial affairs of the debtor" and that there was no property available for distribution to creditors. On January 17, 2014, Mount Calvary filed the instant motion, but it did not file a complaint objecting to the Debtor's discharge.

## Discussion

Section 707(a) of the Bankruptcy Code provides that a court may dismiss a Chapter 7 case for "cause" and specifies the following three examples of "cause": unreasonable delay by the debtor, nonpayment of any fees, and failure to comply with the duties imposed on a debtor by § 521.[1] Mount Calvary does not rely specifically on a violation of any of the three subsections of § 707(a) in its motion; however, it is not disputed that "the three examples given in section 707(a) are illustrative, not exclusive." *Smith v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007).

There is substantial dispute as to whether bad faith constitutes cause for dismissal under § 707(a), especially as Congress amended the Bankruptcy Code in 2005 to add a "bad faith" standard in § 707(b), but did not amend § 707(a) to provide such a standard there. Under § 707(b)(3) the Court is directed to determine, in considering whether the grant of relief under chapter 7 to an individual whose debts are primarily consumer debts would constitute an abuse of the provisions of chapter 7, "whether the debtor filed the petition in bad faith." The instant motion requires the Court to consider the scope and intent of §§ 707(a) and (b) as well as the inherent power of the Bankruptcy Court to dismiss on an undefined standard such as "bad faith."

---

[1] Section 707(a) provides:
    (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including–
        (1) unreasonable delay by the debtor that is prejudicial to creditors;
        (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
        (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

Section 521 lists the duties of a debtor after a bankruptcy filing.

3

Section 707(a)

As noted above, the authorities are in dispute as to whether to read "bad faith" as "cause" for dismissal under § 707(a). The Third and Eleventh Circuits have held that "bad faith" is a ground for dismissal under § 707(a). *See Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364, 369 (3d Cir. 2007) ("[A] debtor's lack of good faith in filing a bankruptcy petition is a proper cause for dismissal under section 707(a)."); *In re Piazza*, 719 F.3d 1253, 1260–62 (11th Cir. 2013) (holding bad faith constitutes cause for dismissal under § 707(a)). The Eighth and Ninth Circuits have held to the contrary. *In re Sherman*, 491 F.3d 948, 970 (9th Cir. 2007) (following *In re Padilla*, 222 F.3d 1184, 1193 (9th Cir. 2000), which held cause rather than bad faith was the proper standard under § 707(a)); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir. 1994) ("If the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a)."). The Bankruptcy Courts also disagree. *In re Adolph*, 441 B.R. 909, 911–12 (Bankr. N.D. Ill. 2011) ("Bad faith is a ground for dismissal only under section 707(b)."), *contra, In re Lombardo*, 370 B.R. 506 (Bankr. E.D.N.Y. 2007); *In re Aiello*, 428 B.R. 296, 302 (Bankr. E.D.N.Y. 2010); *In re Parikh*, 456 B.R. 4, 20 (Bankr. E.D.N.Y. 2011), *vacated and remanded sub nom. on other grounds by Desiderio v. Parikh*, BR 08-08062-478, 2013 WL 1305499 (E.D.N.Y. Mar. 28, 2013). The Second Circuit has not yet addressed the issue, and this Court left the issue open in *In re Ajunwa*, 11-11363 ALG, 2012 WL 3820638 (Bankr. S.D.N.Y. Sept. 4, 2012), noting the split in applicable authority but finding that in *Ajunwa* the petition was not in any event filed in bad faith.

This case calls for the same result. Assuming the truth of Mount Calvary's accusations, most of the Debtor's acts claimed to evidence bad faith are addressed specifically under other provisions of the Bankruptcy Code and cannot properly constitute grounds for dismissal under a

4

vague general equitable concept such as "bad faith." For example, Mount Calvary's motion alleges that the Debtor's petition "failed to make candid and full disclosure of her assets and financial affairs," including failing to disclose that she owned a separate laundromat business that she sold in 2012. In response, the Debtor asserted that she is not well-educated or sophisticated in business matters and that she acted in good faith in filing her bankruptcy and providing full documentation to Mount Calvary and the Chapter 7 Trustee. In any event, assuming the truth of Mount Calvary's allegations, the Bankruptcy Code in § 727(a) provides an exception to discharge if the debtor (i) transferred property of the debtor within one year with the intent to hinder, delay or defraud a creditor; (ii) failed to preserve or concealed or destroyed documents related to the debtor's financial condition; or (iii) knowingly or fraudulently made a false oath. 11 U.S.C. § 727(a).

Mount Calvary did not file a complaint objecting to the Debtor's discharge under § 727(a), even though it had the opportunity to do so. By providing numerous specific grounds for denying a debtor a discharge and requiring that an adversary proceeding be brought, Congress established a mechanism for a party to object to a debtor's failure to disclose material information and carefully circumscribed those grounds, and a court cannot properly rewrite those provisions by deeming them evidence of "cause" to dismiss a petition under § 707(a). The Supreme Court has repeatedly held that specific statutory provisions govern over general provisions, particularly where a bankruptcy court is urged to take action described as equitable. *See Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("[A] statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere"); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.").

5

Similarly, Mount Calvary asserts that the Debtor misled it and never intended to satisfy her company's rent arrearage, notwithstanding entry into a stipulation in New York City Civil Court. Section 523(a) of the Bankruptcy Code contains very specific exceptions to the discharge of debt by individual debtors, including obtaining money by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). If Mount Calvary had concerns about the Debtor's veracity, the proper vehicle in accord with the statute would have been a complaint objecting to the dischargeability of its debt. As the Court stated in *Adolph*, 441 B.R. at 912, "Misconduct addressed under [§§ 523(a) and 727(a)] cannot constitute bad faith under the more general section 707(a)." *See also Sherman*, 491 F.3d at 969, where the Ninth Circuit said simply, "our holding is that the SEC and the district court chose the wrong vehicle—§ 707(a)—for ensuring that [the debtor] paid the contempt and disgorgement judgment debts and did not misuse the bankruptcy process." These sections evidence an intent by Congress to address prepetition wrongdoing separately from § 707(a).

Mount Calvary makes several other charges against the Debtor that similarly cannot constitute "cause" for dismissal. For example, it contends that the Debtor used proceeds from the sale of her laundromat to pay other creditors and purchase a car. The prepetition payment of creditors is not a violation of the bankruptcy laws; if there is an issue of equity among creditors, where some are paid and others are not, it is dealt with in the preference provisions of the Code. As to the purchase of a car, the Bankruptcy Code has very specific provisions relating to the non-dischargeability of debts incurred prior to a filing, but it does not prohibit all consumer purchases. The existence of the car was disclosed as one of the Debtor's assets, and if the value of the car is not available to be distributed to all the Debtor's creditors, the reason is presumably

6

that it is exempt under New York State law. There is no allegation that the Debtor consciously and systematically converted non-exempt assets into exempt assets to damage her creditors.

Finally, Mount Calvary insists that this case was only filed to avoid payment of its debt. Factually, this is demonstrably wrong. The Petition lists total liabilities of $106,970, which is comprised of eleven claims, including a secured claim on the Debtor's motor vehicle, an unsecured priority claim owed to the New York City Department of Consumer Affairs, and various unsecured nonpriority claims besides Mount Calvary's claim. In any event, "courts have frequently held that filing for bankruptcy in order to counter the collection efforts of one creditor without further indicia of bad faith is insufficient for dismissal under § 707(a)." *Ajunwa*, 2012 WL 3820638, at *7, citing *In re Sudderth,* No. 06–10660, 2007 WL 119141, at *2 (Bankr. M.D.N.C. 2007); *In re Glunk,* 342 B.R. 717, 736 (Bankr. E.D.Pa. 2006); *In re Mazzella*, 09-78449-478, 2010 WL 5058395, at *6 (Bankr. E.D.N.Y. Dec. 6, 2010).

The *Lombardo* Court listed fifteen factors that have been used to determine when "bad faith" is present, and Mount Calvary's motion contends that various of the *Lombardo* factors are present.[2] *Lombardo*, 370 B.R. at 511–12. It is not enough simply to list factors and assert that they add up to "bad faith." If a debtor's conduct is to be considered "cause" for dismissal under § 707(a), it should be the type of conduct described in that section—all of which relates to post-petition conduct of a debtor after the filing. As discussed above, it should be conduct not dealt with elsewhere in the statute. Moreover, "there is general consensus that the standard for finding

---

[2] The factors are (1) the debtor's manipulations having the effect of frustrating one particular creditor, (2) the absence of an attempt to pay creditors, (3) the debtor's failure to make significant lifestyle changes, (4) the debtor has sufficient resources to pay substantial portion of debts, (5) the debtor inflates expenses to disguise financial well-being, (6) the debtor is overutilizing protections of the Bankruptcy Code to the unconscionable detriment of creditors; (7) the debtor reduced his creditors to a single creditor in the months prior to the filing of the petition; (8) the debtor filed in response to a judgment, pending litigation or collection action; (9) there is an intent to avoid a large single debt; (10) the debtor transferred assets; (11) the debtor is paying debts to insiders; (12) the debtor failed to make candid and full disclosure; (13) the debts are modest in relation to assets and income; (14) there are multiple bankruptcy filings or other procedural "gymnastics"; and (15) the unfairness of the use of Chapter 7.

7

bad faith under § 707(a) is stringent, and 'is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt *based on conduct akin to fraud, misconduct, or gross negligence.*'" *Ajunwa*, 2012 WL 3820638, at *6, quoting *Indus. Ins. Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir. 1991) (emphasis in original). The allegations against the Debtor simply do not amount to conduct that is so egregious that this Debtor should be shackled with her prepetition debts for possibly the rest of her life.

Indeed, even the cases cited above that have held "bad faith" can constitute cause under § 707(a) do not support a finding of bad faith here because their facts differ substantially from the present case. *See Piazza*, 719 F.3d at 1273–74 (holding that the debtor filed his petition in bad faith to avoid paying a large single debt, that he continued paying debts of insiders, and that he transferred thousands of dollars each month to his wife); *Lombardo*, 370 B.R. at 512–13 (holding that bad faith existed because the debtor filed her petition to frustrate her divorce attorney's attempts to collect on outstanding legal fees that she had incurred over the course of four years); *see also Perlin*, 497 F.3d at 375 (finding that the debtors' "substantial income and a comfortable lifestyle" were insufficient to demonstrate bad faith in filing their petition).

It also cannot be forgotten that chapter 7 is the last refuge of individuals who put all their non-exempt property at the disposal of their creditors in order to obtain the fresh start that Congress has afforded them. If this Debtor could not free herself of Mount Calvary's judgment and her other debts, she would hardly be encouraged to open another laundromat in the Bronx that might succeed where others have admittedly failed. Mount Calvary failed to pursue any of the specific exemptions that Congress has provided for denying the dischargeability of a debt or the discharge of a debtor. It cannot gain the relief it seeks by a mistaken appeal to "bad faith."

8

Section 707(b)

Mount Calvary has also moved for dismissal under § 707(b)(3), which provides for dismissal of a petition filed by a consumer debtor if granting relief would be an abuse of the provisions of chapter 7. As noted above, in determining the issue of abuse, the Court is directed to consider whether the debtor filed the petition in bad faith or if under the totality of the circumstances the debtor's financial situation demonstrates abuse.[3] Under § 707(b)(1), however, a party in interest may only seek to "dismiss a case filed by an individual debtor under this chapter whose *debts are primarily consumer debts*." 11 U.S.C. § 707(b)(1) (emphasis added); *In re Kelly,* 841 F.2d 908, 913 (9th Cir. 1987) (whether the debtors have primarily consumer debts is a statutory threshold for a dismissal motion pursuant to § 707(b)).

The Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In determining whether a debt is a consumer debt, courts have considered whether it was incurred with a profit motive. *In re Stewart*, 175 F.3d 796, 807 (10th Cir. 1999) (alimony owed to former wife was not incurred for profit and was thus a "consumer debt"); *In re Kestell,* 99 F.3d 146, 149 (4th Cir. 1996) (debt derived from lump sum award in divorce settlement was a consumer debt because it was not incurred with profit motive). Furthermore, "a debtor's liabilities are primarily consumer debts if the aggregate dollar amount of such debts exceeds 50% of the debtor's total liabilities." *In re Hlavin*, 394 B.R. 441, 446 (Bankr. S.D. Ohio 2008).

---

[3] Section 707(b)(3) provides:
    (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider—
        (A) whether the debtor filed the petition in bad faith; or
        (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

9

Although the Debtor checked the box on her chapter 7 petition stating that her "[d]ebts are primarily consumer debts," the Debtor's petition lists $106,970 in total liabilities, of which Mount Calvary is listed as having a $66,950 claim for "Business Rental Arrears." Mount Calvary's claim relates to a personal guarantee on a lease the Debtor signed on behalf of her business, J.G. Laundromat, Inc., to rent a commercial building owned by Mount Calvary. Mount Calvary eventually obtained a judgment against the Debtor because J.G. Laundromat failed to pay rent. Clearly the Debtor incurred this debt with a profit motive, thereby rendering it a business debt. The Debtor also listed a $10,700 debt owed to the New York City Department of Consumer Affairs for a "license violation," which presumably also stemmed from the Debtor's business. These business debts represent the clear majority of the Debtor's total liabilities, and Mount Calvary may not seek dismissal of the Debtor's case under § 707(b) because the Debtor's liabilities are not primarily consumer debts.

## Conclusion

Based on the record before the Court, Mount Calvary's motion is denied.

IT IS SO ORDERED.

Dated:  New York, New York
        May 20, 2014

                                        *s/Allan L. Gropper*
                                        UNITED STATES BANKRUPTCY JUDGE